Your Honors, may it please the Court, Brian Wade on behalf of Nancy Setterquist. Ms. Setterquist is here with me in the courtroom at Council Table. I would like to reserve five minutes for rebuttal. Please watch the clock. Thank you, Your Honor. When I learned of the assignment to Your Honors, I learned that the three of you are extraordinarily familiar with Rule 60. You have long histories with Rule 60, and I'm a little bit at a loss as to what I can tell you today that will be new to you, but I'll give it a shot. I propose to cover two issues today. One is the application of equity in resolving issues that arise under Rule 60, including the trial court's error in believing that Ms. Setterquist could have obtained relief in the underlying trial court pursuant to Washington Civil Rule 60B11, which has a counterpart, of course, has Federal Rule of Civil Procedure 60B6. And secondly, I'll hope to impress upon you the importance of viewing the dilemma faced by a client, such as Ms. Setterquist, when confronted with the malpractice of their attorney and trying to decide, now what do I do? Under the Pioneer Investment case, Your Honor, equity properly plays a role in determining whether neglect is excusable within the meaning of Rule 60, and that's the Bateman case that we cited in our materials, Honchin v. Zenon Pictures, another Ninth Circuit case. Under Washington law, if Civil Rule 60 allows any relief from a judgment based upon the one that's excusable, neglect, because excusable to neglect or mistake by a party's auditor and attorney does not constitute an, quote, other reason, close quote, under Washington Rule 60B11. That's the Bergen case and other cases we cited at Rule 20 of our brief. They do have an exception for extraordinary circumstances, and so opposing counsel argues that there were opposing, that there were extraordinary circumstances here. So the trial court, and I think that's what the district court held that the trial court erred in denying the 60B11 motion. Why is that wrong? Your Honor, well, let me refer to a couple of opinions from this court. And as we point out, Washington law and federal law, 60B11, and Federal Rule Civil Procedure 60B1 are essentially the same. So referring to a case authored by Judge Clifton, which is the Latshaw case, I believe, Your Honor. I'll have to take your word for it. They blur together after a while, and sometimes the while's pretty short. I'm guessing you've read this one recently, or at least looked at it. And this, of course, is in the context of default judgment. Now, that's even a more liberal application of Rule 60 than the kind of situation we have here, where it's not a default judgment. It's a judgment that resulted from an attorney's mistake. And Your Honor wrote, relying on our decision in, I believe it's Taney, T-A-N-E, Latshaw first argues that Nygard's alleged gross negligence constitutes an extraordinary circumstance meriting relief under 60B6. And Your Honor goes on to say that, to write that, well, yes, but that's only if the attorney's negligence was gross negligence. That's the only time 60B6 comes into play if the attorney's negligence was gross negligence, and therefore, it is not attributed to the client under the pioneer investment analysis. And that case was filed. Now, that was a default judgment. And the court said, no, 60B6 does not apply. And then that was followed a couple of years later, a few years later, by a case called LAL, L-A-L, versus the State of California, in which the court wrote, and this was in the context of a client saying that the attorney had entered into a Rule 68 settlement. But you're giving us federal law. Are you saying that Washington courts follow our federal decisions under the federal rules and so they're relevant to this decision? Yes, Your Honor, as we pointed out in our reply brief, which the opposing counsel tried to move to strike, the Washington courts have repeatedly relied upon federal court decisions under Rule 60 and have said so explicitly. So yes, I would suggest to you, but this is why we filed a motion to certify. I mean, if there's any doubt about it, let's let the Washington Supreme Court decide it. I don't think there is any doubt about it, because here there's no assertion of gross negligence by anyone. I will ask Mr. Gessner. Let me try to change the focus a little bit. One of the problems with legal malpractice cases is the temptation of everybody involved, including the new sets of lawyers and the judges, is to go back and say, well, gee, this is how it should have happened, which may be what we've seen here from the district court. But I start asking questions myself, too, and I look, for example, when the state court denied the Rule 60 motion without prejudice, and your opening brief inserts a parenthetical for reasons unexplained, I sort of scratch my head and say, well, what happened after that? Because it wasn't entirely unexplained. I mean, the court gave a handwritten direction as to what he's looking for to be able to deal with this motion, because the denial was explicitly without prejudice. So what happened, or why didn't something happen after that? Well, that goes to our request to amend the complaint if we needed to allege that, which I don't believe we did, but that goes to the issue of whether we should have been allowed to amend it. What happened, and it's reflected in the declaration, Miss Satterquist, which was submitted to the district court, is that Mr. Bilby thereupon finally noticed his conflict of interest, which he'd had from the beginning, and withdrew. She retained replacement counsel. She spent $13,000 and change on replacement counsel. She almost got tagged for her ex-husband, who was dying. He died shortly after that. And this was all being brought by his sister. She barely escaped getting hit for attorney fees the first time around with Mr. Bilby. Mr. Bilby's motion, as you'll recall, did not reference 60B1. It referenced 60A, which had no application, and 60B11. Now why did he only reference 60B11? Because he knew 60B1 couldn't come within the one-year limit, and there was no basis for equitable tolling. And so she retained replacement counsel. Now under a couple of Washington cases, City of Seattle v. Bloom, which is a Washington Supreme Court decision, and Flint v. Hart, which is an appeal-level decision, and Bullard, which is another appellate decision, when a client's faced with the dilemma of what to do after the attorney's malpractice, you can't use hindsight to say, well, the client should have done this, or the client should have done that, particularly when they're being advised by a replacement counsel. And in this case, the client's faced with spending tens of thousands of dollars to continue the loss of appeal, the exposure to the opposing party's attorney fees, the risk that she cannot succeed, and she could not have succeeded as a matter of law, but the risk that she could not succeed. And in that situation, the client has to make a decision. What should I do? Must I appeal? How far must I appeal? If I appeal to Division I in the Washington State Courts of Appeal, must I then seek a petition for review in the Supreme Court if I lose? I'm really not trying to get you to speak to maybe, probably should be the question, where does the loss fall? But what happens here is that the train goes slightly off the rails, only the judge sort of says, what I'm waiting to see, I want to hear from the ex-husband's prior counsel to and instead of getting put back on the rails, the train falls off the bridge and down into the canyon. It got just a whole lot worse. Now there are good questions maybe to be answered as to, but I'm still trying to figure out how come I didn't get put back on the rails at the beginning? Because the attorney, the replacement attorney's advised the client that she could not win and she followed their advice. And that's a mitigation issue, which is an issue for the jury. So you're saying that the advice was that she couldn't win because there were no extraordinary circumstances that would allow a 60 B-11 motion to succeed, is that your position? Yes, Your Honor, this would not have warranted B-11 relief. And of course, B-1 and B-11 are exclusive, and if B-1 applied, which it does under Washington law, then you can't use B-11 to circumvent B-1 because then you've thrown out the one year time limit, totally eviscerated the one year time limit. Now I did, I believe I was talking a little bit about the issue of gross negligence versus ordinary negligence. Now I have to tell you, and there's a case called Wolf, Your Honor, I believe you were in the dissent on Wolf. I've read that a number of times and I don't know what it means to this case. And so I'm not going to try and talk about Wolf because I just didn't get it. But there's no suggestion that gross negligence was at issue here. And that's the standard that the Ninth Circuit has established under Latsaw and Lowell and Taney. Perhaps Mr. Rosenberg will get up here and say, oh yes, my client's negligence was gross negligence. He abandoned the client, he, you know, I don't think he's going to do that. So we're talking about ordinary negligence. And ordinary negligence under both Washington law and Ninth Circuit law comes under 60B-1. You have the negligence of the attorney is attributed to the client. She could not qualify for relief under 60B-1 because it had been two and a half years. And I take it a step further. Let's assume 60B-11 did apply. She couldn't have gotten relief anyway. Two and a half years, Your Honor, and I'll refer to Burton v. Spokane Police Department, Norwood v. Vance, both of which were opinions that you, Your Honor, were involved in. And even 60B-1 relief, the one year is the outside limit. Your Honor, I do not know how to pronounce your name, so I guess I'll not try. But Your Honor, written decisions, LaBarbera v. Whitney Trucking. There are about 14 reasonable pronunciations in my head, all of which I've heard. Okay, thank you, Your Honor. I usually say, hey you, but- That's certainly what my wife calls me. Yeah, the Gazzolda case versus Quadrosi Equipment, four months after the judgment was barred by latches, even though it was within the one year time period. Ninth Circuit case, Meadows v. Dominican Republic. The LaBarbera, Whitney Trucking case, the 60B-1 was filed 11 months. Within the one year time period, here is two and a half years. Do you want to save some time for rebuttal? You're down to a minute and a half. I presume I have a minute and a half left here? I do. I'll save my time for rebuttal. That's the time. If you keep talking, you're using your rebuttal time. So this is your total time. I thought this was on my ten minutes. That's your total time. Oh, Lord. Okay. Well, Your Honors, thank you very much for listening so carefully, asking me some questions. Please give Mr. Rosenberg the same attention. Thank you so much. American justice is great. Doesn't matter how big or small you are, huh? Thank you, Your Honors. Mark Rosenberg here on behalf of Appellee Ted Bilby and his law firm. And I think it's important to keep in mind, Your Honors, that this is a case brought in diversity because there are some very unique Washington issues. Council indicates- Why are we in federal court? Well, I can give you- You brought it to federal court. That's true, Your Honor. So you're asking us to deal with state law issues, but we're here because your client decided apparently it should be here. So what can we do? Well, I like federal court because I like the caliber of the judges. I like being able to look at their written opinions and recite their words back to them. There's a whole host of reasons I prefer federal court. But regardless of which court we're in, in this court, it is a case brought in diversity. And therefore, we do look to Washington law and keep that in mind. So the position is of opposing counsels that the trial court was correct in denying the 60 v. 11 motion because there were no extraordinary circumstances. There was no gross negligence. Yes, Your Honor. And first of all, I want to discuss counsel's argument about Washington Rule 60 being the same as federal Rule 60. It is not. Starting at page 25 of our brief, I think we have three pages of different cases in which the courts have recognized that 60 v. 1 could have applied. It was past the one year, and the court still listened to v. 12. Your client was apparently offered the opportunity to take up an appeal, presumably to the Washington State Court of Appeal, where that argument might have had some traction. But it appears that he didn't do that. He didn't take up that offer. Is that correct? My client had already been substituted out for another counsel. And as I understand the record, the plaintiff offered to him the opportunity at his expense to proceed with an appeal. Well, she had her own counsel at that time. And the client controls the litigation. Is that true or not? Was that offer made? Well, first of all, it's outside the record. But there was a letter indicating that. And your client did not take up that offer. So perhaps his confidence that Washington law was so clearly on the side that you're currently advocating might not have been so clear. I would disagree with that, Your Honor. As counsel said, there was a conflict. She got another lawyer. And she was represented. She was well represented. Well, I mean, that's a question that can be delved into later. Are we ever getting to an answer to the question I posed, which is why would your client not be interested in financing an appeal if you're that confident that the Washington State Court of Appeals would have ruled in favor of Ms. Sutterquist? Well, again, I believe that's outside of the 60B record and the issues of law we're dealing with here. So you don't have an answer to the question. Well, his reasons are. And it kind of screams out, if it's really so clear under the law that should be the result, then why doesn't he take up that offer to solve the problem? Well, I don't think we can make assumptions as to what he was thinking or why he wasn't doing it. You haven't given him an alternative explanation. Well, counsel indicated he withdrew because of a conflict. The question wasn't whether he personally would represent her. As I understand it, the offer was that he could undertake to finance an appeal. That wouldn't have been a conflict. He apparently did not take up that offer. Why not? You haven't given him an answer other than maybe he wasn't so clear that that position was going to win. Well, the answer is not in the record, Your Honor, because we've been dealing with issues of law. And we're on issues of law because it's a motion to dismiss. How can this issue be resolved on a motion to dismiss? What is implausible about plaintiff's claim? Well, it can be dismissed on a motion to dismiss for the reasons set forth. The evidence you're talking about. Well, you're just telling me that you can't answer questions because it's not in the record. The record's never been developed because this is a motion to dismiss. The evidence you're talking about, Your Honor, was in plaintiff's motion for partial summary judgment. It was not something under consideration in the 60B motion. In the 60B motion, we're looking at Paradise Orchards and Nelson v. Eisenhower Carlson. In the Nelson case, I mean, you also have an attorney who, there's no dispute, had an error. He erred in regard to the statute of limitations. Well, actually, Paradise Orchards sounds like it wasn't according to the second court. It wasn't the lawyer that erred. It was the first court that erred. Well, in both. Yeah, in Paradise Orchards, that's right. That is a primary. That's not the argument in this case, is it? Well, the argument is in this case. Is there any doubt but that your client erred in drafting the document? And that seems to be the given that the whole case starts from. There was a scrivener. It was good faith, and so on and so forth. But the problem is that the document that was entered wasn't reflective of the agreement that was reached. There was a scrivener's error. There's no dispute about that. But the state court could have and should have corrected that. And the question is, with that in mind, did Ms. Satterquist use those avenues to correct that that were available to her? Well, let's start at the beginning. Because once your client withdrew, that obligated our current plaintiff to obtain new counsel with some expense. So why isn't that expense automatically, even if the problem gets fixed, why isn't that an expense, a direct injury as a result of the scrivener's error for which your client is responsible? Well, I have two answers for that, Your Honor. First of all, fees paid to a lawyer for the work they're doing in the underlying case are not an injury. They may be considered so in the legal malpractice case. But the focus is on correcting the error. How could it not be an injury for the legal malpractice  If none of this has to happen but for the scrivener's error, how does that not qualify as damages for legal malpractice? Well, again, if you look at the Nelson v. Eisenhower Carlson case, the lawyer did make a mistake. It led to additional litigation. The plaintiff eventually settled out for half a million dollars less than they were awarded the first time around, claiming that they worried about losing the appeal because the matter was appealed based on the statute of limitations error. The lawyer thought it was a three-year medical malpractice statute when, in fact, it was a two-year Tort Claims Act error statute of limitations. So clearly, in that case, the cost might have been higher because of the lawyer's error. But the damage sought could have been avoided by permitting the court to proceed and come up with the right decision. If there was an answer to my question in what you just told me, I have missed it. I don't understand how that answers my question. Well, just because something is more expensive doesn't mean it's a damage. One lawyer might take one hour to write a brief, and another lawyer might take three hours to write a brief. And if the brief doesn't have to be written but for the scrivener's error, how can that be considered not something for which the scrivener's error caused damage? All I'm saying, Your Honor, is the client pays for two hours more for the same brief, but that doesn't make them negligent simply because they ended up paying more in attorney's fees. Again, I don't hear any answer to my question in what you just said. So maybe you need to translate. Well, Your Honor, but for the scrivener's error, nothing else happens. Now, you can quarrel over how much more has to happen. But for the scrivener's error, she never goes. Your client never appears in court on the Rule 60 to begin with. And she never has to go and hire another lawyer after your client withdrew. If none of that happens, how is the expense of that not a legitimate injury for which damages can be claimed resulting from legal malpractice? That is not quite accurate, Your Honor, in that my client did bring the first CR 60 motion. That's right. And she didn't have to hire. And presumably, she didn't pay him fees for that. She didn't incur damages until after your client withdrew, which may have been perfectly appropriate. I'm not arguing for that. But I'm saying, how can the additional expense that resulted because of the scrivener's error not be damages for the scrivener's error? For the same reason, Your Honor, that the additional work done in the Nelson v. Eisenhower case wasn't considered damage in that case. It was an expense of the litigation. It was more, perhaps, than it might have been. But Ms. Satterquist could have continued the litigation. She was a client in control of the litigation. Had she proceeded in the litigation, the court could have corrected this error in any number of situations. I mean, in the Rule 60, the court did deny without prejudice. It wanted to see the opposing lawyer's declaration. Had that been provided to the court, Ms. Satterquist could have prevailed. I mean, one thing it's important to look at. I'm sorry, Your Honor, did you have a question? In none of the cases that you cited did I see regarding whether the trial court was correct in denying the 60 v. 11 motion or should have granted it that it would have been reversed on appeal. Did I see a case that was analogous to this one where it was mere scrivener's error and negligence? The extraordinary circumstances were always something much more significant or egregious. So can you address that? What do you think is the best case for saying that the trial court was wrong in denying the 60 v. 11 motion? Well, I think Judge Kuhnhauer cited a very good case in his order. He cited the In Readoption of Henderson case. That was at 644 P. 2nd, 1178. And there you have what was a scrivener's error. It was more than a year past. And the court found it equitable to hear the case even though more than a year had passed and even though it could have been brought as a CR 60 B1. Well, weren't there some, in my recollection, I said there were some fairly extraordinary facts in that case. Am I wrong regarding? That was regarding adopted children. I apologize, Your Honor. Well, there are some extraordinary facts in this case. I mean, you have a situation where you have a CR 2A agreement. Both parties agreed to it. There should be no question but that this was the intent of the parties. Then down the road, one of the parties denies that that was the agreement they made. But the party, Bard and Sutterquist, doesn't even submit his own declaration. There's a declaration signed by somebody else saying they have power of attorney. There's no power of attorney in there. The court wants to see. So there was an error. So in Henderson, the adoption decree would have made a man the legal father of his ex-wife's children from a former marriage. And the error was not a scrivener's error but the result of some confusion. So here, any error was merely the result of the scrivener's error. And doesn't result in these sorts of odd situations other than the amount of the decree has changed, in effect. Well, I'm sorry. What makes that extraordinary? Well, I mean, you have an individual who is entitled through equity.  Not getting the benefit of a bargain that was agreed to. And you have someone who isn't even the other party denying that the bargain was entered into. I mean, that's very unusual. So I want to go back to something that Judge Clifton was raising before. You get an order from the judge saying, I'm denying this without prejudice because I want to, in effect, hear from the other side. Her new attorneys say, we can't win. She writes a letter to your client saying, I'm told, she spells it out, I'm told we can't win. But if you think otherwise, you pay the cost of getting me a new attorney to take the appeal. No response to that. That is, in effect, turned down by silence. Then you're arguing now, oh, if an appeal had been taken, they would have won for the reasons you're just discussing with Judge Akuta. Aren't you, in effect, stopped? I don't mean that in a technical sense, but how can you ride both those horses? Well, I don't think we're stopped, Your Honor. And again, we're talking about something relevant to the plaintiff's summary judgment motion, not the 12B6 motion here. But the plaintiff, Ms. Zetterquist, had a lawyer. She could have proceeded in regard to either the 6DB motion, the revision of the final order, or an appeal. And she had control of her litigation at that point. My client wasn't an attorney of record at that point. But what she's saying in the letter, in effect, is you made the error. My attorneys now say that it can't be fixed. But if you, the person who made the error, disagree and think it can be fixed, you should pay for it. Well, look, I think that's a damages error. And there's, of course, four elements to legal malpractice. I don't think you get to the damage calculation unless you can show legal causation.  met if the plaintiff's summary judgment does not proceed with correcting the trial court. So your client opted not to proceed, or not to opt to finance the proceed. The plaintiff had control of her litigation at that point. And she offered to let your client finance an appeal, and offered to use whatever appellate attorney your client ponied up. And your client didn't respond. She had her own lawyer at that point who was representing her. Who has told her that she can't win. And she tells that to your client. Where does your client step up and take responsibility for anything? Are you saying that an attorney who is no longer a representing lawyer, where someone else is represented, still has a duty to go into court? He's being made an offer to cut this, to mitigate these damages. Again, this is a damages. If you're so convinced that you're going to win on appeal, why didn't he elect to take that offer? Again, this is a damages issue, Your Honor. There's four elements to legal malpractice. It's not a damages issue. Because you're saying you haven't established legal causation, but he won't take up the appeal that would answer what you say has to be done to answer the legal causation question. She has a lawyer that has to act on what she wants her to do. Now, her lawyer may say, I don't think we can win. But she may have a lawsuit against her successor counsel. But she has a duty, as the party in that case, to make the decision to move forward. And she can do that, or she can not. And your client, who is responsible for these dominoes starting to fall, has no responsibility at all? Under Paradise Orchards and Nelson V. Eisenhower Carlson, no, he does not. We've taken you all over your time. Thank you. Thank you, Your Honor. Thank you. Your Honor, I'll be very brief, as the clock tells me I must. Counsel describes this as a scrivener's error. I take that as an agreement that it was not gross negligence. Second, Your Honor, Ms. Satterquist did pay Mr. Bilby fees for the Rule 60 motion. I think it was in the neighborhood of $12,500. I believe that's in the record, but I was looking for it there and didn't find it that quickly. She did pay him fees. And so those would be mitigation expenses under, for example, Flint v. Hart. Third, conflicts can be waived. And again, Mr. Bilby did not have to do the appeal himself. And I also think you should think of the attorney who would be filing that appeal who would be subject to potential frivolous appeal remedies if they filed that appeal. But if you look at ER 69, 069, what Mr. Bilby told, and there was a letter also with that, what he told Mrs. Satterquist was that she either had to get a replacement attorney or he would withdraw and she'd have to represent herself. Your Honors, I ask that you reverse the trial court decision and reinstate my client's case. I also ask you to rule on that summary judgment motion. There's no reason not to. Thank you so much. The case of Nancy Satterquist v. Law, Office of Ted Bilby is submitted, and we are adjourned for this session. Thank you.
judges: Clifton, Ikuta, Rakoff